### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FUE XIONG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   **Case No. 19-CV-0456-CVE-JFJ** |
| | ) |
| RICK WHITTEN,[1] | ) |
| | ) |
| Respondent. | ) |

### OPINION AND ORDER

This matter is before the Court on petitioner Fue Xiong's amended 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 24).  Xiong is a state inmate appearing through counsel.  Having considered the amended petition,[2] respondent Rick Whitten's response in opposition to the amended petition (Dkt. # 35), records from state court proceedings (Dkt. ## 30, 36), and applicable law, the Court concludes that Xiong is not entitled to federal habeas relief.  The Court therefore denies the amended petition.

---

[1]    According to the offender website maintained by the Oklahoma Department of Corrections (okoffender.doc.ok.gov), Xiong is currently incarcerated at the North Fork Correctional Center (NFCC) in Sayre, Oklahoma.  The Court therefore substitutes the NFCC's warden, Rick Whitten, in place of Scott Crow as party respondent.  Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.  The Clerk of Court shall note this substitution on the record.

[2]    Xiong, who initially appeared pro se, filed a petition for writ of habeas corpus (Dkt. # 1) on August 16, 2019.  After retaining counsel, and with leave of Court, Xiong filed the amended petition (Dkt. # 24) on August 21, 2020.  Dkt. ## 19, 23.  Because Xiong filed an amended petition, the Court declares moot the original petition.

## BACKGROUND

The State of Oklahoma (the state) charged Xiong in Tulsa County District Court, Case No. CF-2014-2159, with one count of first degree murder. Dkt. #36-1, at 25.[3] Xiong's case proceeded to jury trial in June 2016, and the jury found Xiong guilty of first degree murder. Dkt. #36-3, at 27-30. The trial court sentenced Xiong to life with the possibility of parole. Dkt. # 36-3, at 27-30.

At trial, the state presented evidence that on May 3, 2014, Mando Tang rented two rooms at a Motel 6 in Tulsa, Oklahoma to watch a boxing match. Dkt. # 30-2, at 200-05; Dkt. # 30-3, at 12. Mr. Tang invited several people to watch the boxing match, including his girlfriend Shere, Vang Xiong, Duke Vang, Jai Xiong,[4] Thai Xiong, Tommy Xeng Soung, Fue Jong Soung, Don "Mike" Nguyen, Xiong, and Xiong's wife Blia Moua. Dkt. # 30-2, at 203, 212-14, 216-17, 249; Dkt. # 36-1, at 92. Xiong and others arrived at the Motel 6 between 6:00 p.m. and 7:00 p.m. and the boxing match began about midnight. Dkt. # 30-2, at 204-06

On the same night, Larenz Valentine and his cousin, Terrence Valentine, were out celebrating Larenz's upcoming graduation at a club. Dkt. # 30-2, at 57-58. At approximately 2:00 a.m. on May 4, 2014, Larenz and Terrence left the club and drove Terrence's Tahoe to the Super 8 motel, located next to the Motel 6, to pick up Terrence's "lady friend." Id. at 58-60.

A little after 2:00 a.m., Blia left the motel room and walked down to the parking lot. Dkt. # 30-2, at 248. At the same time, Tommy walked out onto the balcony of the motel room to smoke a cigarette with Thai and Don. Id. at 248-49. While Blia was in the parking lot, Terrence and Larenz

---

[3]     For consistency, the Court's citations refer to the CM/ECF header pagination.

[4]     In some parts of the trial transcripts, it appears that Jai Xiong is mistakenly referred to as "Chai." See, e.g., Dkt. # 30-2, at 203, 213, 249-50, 256.

drove by and Larenz asked Blia if she knew the woman they were looking for. Id. at 60-61. Blia stated she did not know the woman, walked off, got into her car, but did not drive away. Dkt. # 30-2, at 61, 98. After Blia responded to Larenz's question, Larenz heard the men from the hotel balcony yell that Blia was married. Id. at 61, 63, 97-98, 249. Tommy told Terrence and Larenz to leave and began cursing at them. Id. at 63, 98, 249. Because of the hostile nature of Tommy's statement, Terrence parked the Tahoe, and he and Larenz got out of the Tahoe. Id. at 63, 99. Tommy went into the motel room and told Xiong that "someone was messing with [Xiong's] wife outside " and that he "need[ed] to go check." Id. at 249, 277-78. Xiong ran down the stairs towards the parking lot. Id. Tommy, Thai, Jai, Vang, and Duke followed him to the parking lot. Id. at 249-50, 278.

Xiong ran to his car and grabbed a gun, while the other five men ran towards Larenz and Terrence, who were standing on the passenger side of the Tahoe. Dkt. # 30-2, at 64. Tommy testified that he and the other four men who followed Xiong to the parking lot were telling Larenz and Terrence that it was late, that they did not want any "trouble," and that Terrence and Larenz should "go home." Id. at 251. According to Larenz, Xiong, who was standing near the front passenger side of the Tahoe, cocked his gun, aimed it at Larenz, and told Larenz to "get out of here." Dkt. # 30-2 at 67, 124, 132-33. Larenz testified that he approached Xiong to shake his hand, Xiong moved the gun from his right hand to his left and shook Larenz's hand, and Terrence walked around the back of the Tahoe to the driver's side. Id. at 67-68, 132-34. When Terrence walked around the back of the Tahoe, Xiong walked around the front towards the driver's side. Id. at 68.

As Larenz got into the passenger seat of the Tahoe, he heard gunshots and ran to the other side of the Tahoe where he saw Xiong and Terrence "tied up" in a "hug" with Xiong shooting his gun into Terrence's back. Dkt. # 30-2, at 70-71. Larenz saw Terrence stumble backwards, saw

3

Xiong raise his gun "to shoot again," and "tackled [Xiong] into the bushes."  Id. at 71.  After Larenz

tackled Xiong, the "other men" "came jumping, kicking and punching [Larenz] in the back of [his]

head."  Id. at 73.  Xiong ran up to the motel room, grabbed his children, and everyone dispersed.  Id.

at 73, 190-191.  Larenz stayed at the crime scene and tried to call Terrence's brothers and sisters.

Id. at 79.

According to Tommy, the events near the Tahoe unfolded slightly differently.  Tommy

testified that while he, Thai, Duke, Vang, and Jai confronted Larenz on the passenger side of the

Tahoe, Xiong was near the front or driver's side of the Tahoe. Dkt. # 30-2, at 251-53.  Tommy heard

Larenz "saying, get the gat, get the gat," and "heard [Terrence] fuss around in the car trying to find

something" on the driver's side  Id. at 253, 256, 267.  The next thing Tommy heard was "don't do

it, don't do it."  Id. at 254, 267.  Tommy heard a gunshot, looked around the back of the Tahoe,

toward the driver's side, and "saw [Terrence] have both his hands on [Xiong], and [Xiong] had one

of his hands pushing [Terrence] away, and the gun was behind [Terrence's] back and it just kept

going off."  Id. at 254-55. Tommy testified that Xiong was the only person he saw with a weapon.

Id. at 256.  Tommy saw Terrence fall face down, and saw Larenz "jump[] on" Xiong.  Id. at 257,

267, 282.  According to Tommy, Larenz then threatened "to call some people," and Tommy and Thai

left the area.  Id. at 257-58, 262-63.

Shayn McCleary, who was staying at the Motel 6, woke up to the sound of gunshots and "saw

a gentleman fall and two guys fighting around him, and then at that time the guys quit fighting and

ran off."  Dkt. # 30-2, at 181-82. McCleary testified "one of the gentlemen that was with the man

that was shot" stayed at the scene.  Id.  Robert Beavers, another individual staying at the motel,

testified his wife woke him up because a vehicle had been running in the parking lot for a "little

while." Dkt. # 30-2, at 236.  When he got up to check, he heard "four or five gunshots."  Id. at 236-37.  When Mr. Beavers opened the door, he saw a man wearing a black hoodie run from behind the Tahoe and fire two more shots.  Id. at 237.  When Mr. Beavers closed the door, he saw someone run down the stairs and saw a white car exit the parking lot at a high rate of speed.  Id.

Dr. Joshua Lanter, a forensic pathologist and medical examiner, performed the autopsy of Terrence on May 5, 2014.  Dkt. # 30-3, at 45, 51, 54.  Dr. Lanter found that Terrence had four gunshot wounds.  Id. at 61.  Three entrance wounds were on Terrence's back.  Id. at 63.  The fourth entrance wound was found in his right ear.  Id. at 66.  According to Dr. Lanter, the bullet that caused the fourth wound entered Terrence's right ear and traveled downward and backward, exited through his jaw, reentered his neck, exited near his right shoulder.  Id. at 66-67.  Terrence also had injuries to his right eye and temple region which were consistent with the body striking something hard or something hard striking the body.  Id. at 69-70; see also Dkt. # 36-4, at 2 (diagram of Terrence's injuries).  Dr. Lanter testified the blunt trauma to Terrence's face was consistent with the body falling at the time of death.  Dkt. # 30-3, at 70-71.  Dr. Lanter also testified that Terrence's blood alcohol level was .16 at the time of his death, that Terrence died from multiple gunshot wounds, and that his death was classified as a homicide.  Id. at 76-77.

Diana Baumann, a detective with the Tulsa Police Department, searched the motel room where Xiong and others watched the fight and found "[l]ots of beer cans, a billfold . . . , [and] evidence of maybe a card game, [and] lots of activity."  Dkt. # 30-3, at 164, 173.  The identification card located in the billfold had Xiong's name on it.  Id. at 174-75.  Detective Baumann did not locate any weapons in the motel room or in the dumpsters "next to [Terrence's] body."  Id. at 175-76.  Law enforcement officers searched the Tahoe and found a crossbow, but found no arrows, guns, or

ammunition.  Dkt. # 30-3, at 176-81.  Law enforcement officers searched Xiong's residence and found multiple magazines for a .40 caliber gun and a Smith & Wesson box of .40 caliber ammunition.  Id. at 194-95.  The officers did not find the gun used in the shooting, but the ammunition found at Xiong's residence matched shell casings found at the crime scene.  Id. at 194-96.  Based on the investigation of the shooting, Detective Baumann concluded that Xiong "was the only one to ever have a firearm," he was the one that fired the shots, and "he was the one who fled the scene."  Id. at 187-88.  She further concluded "[t]hat the defendant, Fue Xiong, produced a firearm and shot Terrence Valentine multiple times."  Id. at 199.  Finally, based on information she learned during the investigation, Detective Baumann believed that Xiong was the aggressor and that Terrence did not attack him.  Id.

After his conviction, Xiong filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA).  Dkt. # 35-1.  He claimed that the evidence presented at trial was insufficient to sustain a verdict of first degree murder, that the trial court erred by not instructing the jury on lesser offenses, that his trial counsel was ineffective for failing to request instructions for lesser offenses, and that an accumulation of errors deprived him of a fair trial.  Id. at 14-35.  The OCCA affirmed Xiong's conviction and sentence on May 17, 2018.  Dkt. # 35-4.

Xiong filed an application for post-conviction relief on August 16, 2019.  Dkt. # 35-5.  He claimed, in relevant part, that his appellate counsel was ineffective for failing to raise a claim of misconduct by the trial court for stating this case his case was not a "stand your ground" case and

for insufficiently raising a cumulative-error claim on direct appeal.[5]  Dkt. # 35-5 at 3-8, 35-36.  On

March 6, 2020, the OCCA affirmed the trial court's denial of post-conviction relief.  Dkt. # 35-8.

In this habeas proceeding, Xiong claims in his amended petition:

1.     the evidence presented at trial was insufficient to prove malice aforethought, and the state failed to show beyond a reasonable doubt that Xiong was not acting in self-defense (claim one), Dkt. # 24, at 4-10;

2.     the trial court erred by failing to instruct the jury on lesser included offenses, thus depriving Xiong of his right to due process and fair trial as guaranteed by the Sixth and Fourteenth Amendments (claim two), Dkt. # 24, at 10-11;

3.     Xiong received ineffective assistance of counsel because trial counsel
   a.     did not request instructions for lesser included offenses (claim three), Dkt. # 24, at 11-12,
   b.     had a conflict of interest (claim six), Dkt. # 24, at 15-16, and
   c.     failed to present or impeach certain witnesses (claim six), Dkt. # 24, at 15-16; and

4.     Xiong received ineffective assistance of counsel because appellate counsel
   a.     failed to raise a cumulative-error claim (claim four), Dkt. # 24, at 12, and
   b.     failed to raise a claim alleging that the trial court committed misconduct by stating, in front of the jury, that Xiong's case was not a "stand your ground case," (claim five), Dkt. # 24, at 12-14.

Respondent urges the Court to deny the amended petition as to all claims.  Dkt. # 35.

## DISCUSSION

Because Xiong is a state prisoner, the Antiterrorism and Effective Death Penalty Act

(AEDPA) governs this Court's review of his claims.  Under the AEDPA, a federal court may grant

habeas relief to a state prisoner "only on the ground that [the prisoner] is in custody in violation of

the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  However, before

---

[5]     Xiong raised several other claims in his application but he does not reassert them in this proceeding.  Dkt. # 24, at 3-4.

seeking federal habeas relief, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," Hawkins v. Mullin, 291 F.3d 658, 668 (10th Cir. 2002). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack." Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994). And, when respondent alleges a claim is unexhausted, the prisoner bears the burden of showing he has exhausted available state remedies. Clonce v. Presley, 640 F.2d 271, 273 (10th Cir. 1981). If the prisoner did not exhaust available state remedies, a court may dismiss the unexhausted claim or treat the claim as procedurally defaulted and decline to review the claim, or deny the claim on the merits. Grant v. Royal, 886 F.3d 874, 891-92 (10th Cir. 2018). To overcome the procedural default of a claim a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 892 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Or, in some cases, the court may overlook a procedural bar to habeas relief and deny relief on the merits of the federal claim. Smith v. Duckworth, 824 F.3d 1233, 1242 (10th Cir. 2016).

When a prisoner properly fairly presents a federal claim to the highest state appellate court, and the state appellate court rejects that claim on the merits, a federal habeas court may not grant habeas relief unless the prisoner first demonstrates that the state court's adjudication of those claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts"

in light of the record presented to the state court, 28 U.S.C. § 2254(d)(2).  Under § 2254(d), a "prisoner must show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'"  Shinn v. Kayer, 141 S. Ct. 517, 523 (2020) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

With these standards in mind, the Court turns to Xiong's claims.

## I.        Sufficiency of the evidence

In claim one, Xiong alleges the evidence presented at trial was insufficient to prove the elements of first degree murder, and that on direct review, the OCCA's decision unreasonably applied federal law and was based on an unreasonable determination of the facts presented at trial. Dkt. # 24, at 4.  Specifically, Xiong contends the state failed to meet its burden of disproving, beyond a reasonable doubt, that Xiong acted in self-defense and failed to prove the element of malice aforethought beyond a reasonable doubt.  Id. at 5, 8.  In support of this claim, Xiong argues that the trajectory of the fourth gunshot wound and Terrence's intoxication support Xiong's theory that Terrence was the aggressor.  Dkt. # 24, at 5-6.  In addition, Xiong argues that his size, being 34 pounds lighter than Terrence, the fact that his kids were in the motel room, and Terrence's aggressive demeanor demonstrated that no "reasonable juror could . . . conclude that Mr. Xiong provoked any altercation" or "willingly entered into mutual combat."  Dkt. # 24, at 6.  Xiong further states that there was no eyewitness to the shooting or the "initial confrontation" that occurred at the driver's side of the Tahoe before the shooting, and that all the evidence presented was circumstantial.  Id.

Respondent argues that the OCCA's decision is properly based on federal law, specifically Jackson v. Virginia, 443 U.S. 307 (1979), as adopted in Spuehler v. State, 709 P.2d 202 (Okla. Crim.

App. 1985), and is not based on an unreasonable determination of the facts presented at trial.  Dkt.

# 35, at 12-22.

The OCCA reviewed Xiong's insufficiency of the evidence claim on direct appeal.  Dkt. #

35-4.  The OCCA held:

> The jury was instructed on the defense of self-defense against the charge of first
> degree murder.  Xiong claims that the evidence was insufficient to support his
> conviction because the State failed to show that he was not acting in self-defense
> when he shot the victim.  Once the defense of self-defense is raised, the State bears
> the burden to disprove it beyond a reasonable doubt.  See OUJI-CR(2d) 8-49;
> McHam v. State, 2005 OK CR 28, ¶ 10, 126 P.3d 662, 667.  "A person is justified
> in using deadly force in self-defense if that person reasonably believed that the use
> of deadly force was necessary to protect herself form imminent danger of death or
> great bodily harm." Bechtel v. State, 1992 OK CR 55, ¶ 33, 840 P.2d 1, 11; OUJI-
> CR 8-46.  This standard is a hybrid standard that combines both objective and
> subjective elements.  Id.  As such, jurors "must first determine whether the defendant
> believed that he was faced with imminent danger of death or great bodily harm before
> he used physical force and then determine whether the defendant's belief was
> reasonable." Perryman v. State, 1999 OK CR 39, ¶ 9, 990 P.2d 900, 904.
> Furthermore, a person who is the aggressor in an altercation or who enters into
> mutual combat may not claim self-defense.  West v. State, 1990 OK CR 61, ¶ 7, 798
> P.2d 1083, 1085.  "[A] person is an aggressor when that person by his wrongful acts
> provokes, brings about, or constitutes an altercation." Jones v. State, 2009 OK CR
> 1, ¶ 64, 201 P.3d 869, 889.  If the person who was the original attacker withdraws
> and the other person pursues the altercation more than is necessary to ensure his
> safety, the pursuing party can take on the status of the attacker and lose the right to
> assert self-defense.  Allen v. State, 1994 OK CR 13, ¶ 30, 871 P.2d 79, 92.  The
> State's evidence was sufficient to disprove the claim that Xiong shot the victim in
> self-defense.
>
> Xiong also claims that the evidence presented at trial was insufficient to support his
> conviction for first degree murder because the State did not prove each element of
> the crime beyond a reasonable doubt.  To sustain a conviction for first degree malice
> murder the State is required to prove that the defendant unlawfully caused the death
> of another human with malice aforethought.  See 21 O.S.Supp.2012, § 701.7(A).
> [The OCCA] reviews challenges to the sufficiency of the evidence in the light most
> favorable to the state and will not disturb the verdict if any rational trier of fact could
> have found the essential elements of the crime charged to exist beyond a reasonable
> doubt.  Head v. State, 2006 OK CR 44, ¶ 6, 146 P.3d 1141, 1144.  See also Spuehler
> v. State, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04.  In evaluating the evidence

> presented at trial, [the OCCA] accept[s] the fact-finder's resolution of conflicting evidence as long as it is within the bounds of reason.  See Day v. State, 2013 OK CR 8, ¶ 13, 303 P.3d 291, 298.  [The OCCA] also accepts all reasonable inferences and credibility choices that tend to support the verdict.  Coddington v. State, 2006 OK CR 34, ¶ 70, 142 P.3d 437, 456.  The State proved each element of the crime of first degree malice murder beyond a reasonable doubt; this proposition is without merit and relief is not required.

Dkt. # 35-4, at 2-4.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged.  See Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970).  Jackson provides that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319.  But "Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).  As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011) (per curiam).  And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

Id.  To determine whether there was sufficient evidence presented at trial to sustain Xiong's

conviction, the Court first must look to Oklahoma law for the elements of the crime.  Jackson, 443

U.S. at 324, n. 16; Torres v. Mullin, 317 F.3d 1145, 1152 (10th Cir. 2003).

### A.     Malice aforethought

Oklahoma's first degree murder statute, OKLA. STAT. tit. 21, § 701.7,  provides, in relevant

part, that "[a] person commits murder in the first degree when he unlawfully and with malice

aforethought causes the death of another human being.  Malice is that deliberate intention unlawfully

to take away the life of a human being, which is manifested by external circumstances capable of

proof."  In Xiong's case, the factual allegations are largely undisputed by the parties.  Specifically,

the parties agree, and the record supports, that Tommy told Xiong that Terrence and Larenz were

"messing with [his] wife outside " and that he "need[ed] to go check."  Dkt. # 30-2, at 249.  Xiong

proceeded downstairs to the parking lot, retrieved a firearm from his car, and confronted Larenz and

Terrence.  After pointing a gun at them and telling them to leave, Xiong shook Larenz's hand, and

Terrence walked around the back of the vehicle to the driver's side.  There was conflicting testimony

about whether Terrence was looking for a weapon or simply preparing to leave.  But there was no

dispute that Xiong walked around the front of the car to the driver's side, he and Terrence engaged

in a physical altercation, and Xiong shot Terrence four times.  Xiong then left the scene with his wife

and children.

On this record, it was objectively reasonable for the OCCA to conclude that the jury

rationally convicted Xiong of first degree murder.  First, Xiong obtained a firearm before any

interaction with Terrence or Larenz.  And second, after Xiong and Larenz shook hands, Xiong did

not walk away from Terrence or Larenz, nor did he walk away from the vehicle.  Rather, Xiong

walked to the driver's side door and a fight ensued that ended when Xiong shot Terrence four times. As the OCCA reasoned, the jury had a rational basis to find that Xiong was the aggressor and possessed the intent to continue—and escalate—a confrontation that appeared to be over.  Because sufficient evidence was presented at trial to establish the element of malice aforethought, the OCCA's rejection of Xiong's claim is not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2).  Further, the OCCA correctly identified and reasonably applied the Jackson standard in adjudicating this claim. 28 U.S.C. § 2254(d)(1).

**B.      Self-defense**

Under Oklahoma law, "[a] person is justified in using deadly force in self-defense if that person reasonably believed that use of deadly force was necessary to protect herself from imminent danger of death or great bodily harm."  Bechtel, 840 P.2d at 11.  The jury was so instructed.  Dkt. # 36-2, at 164.  The jury also was instructed, in accordance with Oklahoma law, that "[s]elf-defense is not available to a person who was the aggressor, provoked another with the intent to cause the altercation, voluntarily entered into mutual combat no matter how great the danger to personal security became during the altercation unless the right of self-defense is reestablished." Dkt. # 36-2, at 165.  The jury was further instructed that:

> A person who was the original aggressor, provoked another with intent to cause the altercation, voluntarily entered into mutual combat may regain the right to self-defense if that person withdrew or attempted to withdraw from the altercation and communicated his desire to withdraw to the other participants in the altercation. If, thereafter, the other participants continued the altercation, the other participants became the aggressors and the person who was the original aggressor[,] provoked another with intent to cause the altercation, voluntarily entered into mutual combat is entitled to the defense of self-defense.

Dkt. # 36-2, at 166.

13

As previously discussed, the evidence presented at trial showed that Xiong and Larenz shook hands and Larenz attempted to walk away from the initial confrontation on the passenger side of Terrence's vehicle. Larenz testified he got into the passenger side, and Terrence walked around the back of the Tahoe, toward the driver side. A rational jury reasonably could have discredited Tommy's testimony that Terrence was rummaging through the Tahoe for a weapon and instead inferred that Terrence was walking to the driver side of the vehicle so the two men could leave. Xiong, who appears to have had no reason to walk to the driver side door, proceeded there with a gun. On the record presented, it was objectively reasonable for the OCCA to conclude that the jury rationally decided that Xiong was the aggressor and did not act in self-defense. Thus, the OCCA's decision does not rest on "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). Further, as previously stated, the OCCA's decision is neither contrary to, nor based on an unreasonable application of, Jackson. 28 U.S.C. § 2254(d)(1).

### C.    Conclusion

Based on the foregoing, the Court concludes that § 2254(d) bars relief as to Xiong's challenges to the sufficiency of the evidence. The Court therefore denies the amended petition as to claim one.

## II.    Failure to instruct on lesser included offenses

In claim two, Xiong alleges he was denied his rights to a fair trial and due process as guaranteed by the Sixth and Fourteenth Amendments because the trial court did not instruct the jury on the lesser included offenses of first degree manslaughter by resisting criminal attempt and second

degree murder.  Dkt. # 24 at, 10.[6]  Respondent argues that Xiong's claim for failure to instruct on lesser included offenses does not allege a violation of federal law that this Court can review.  Dkt. # 35, at 25-26.

The Court agrees.  Habeas relief may be granted only to state prisoners who are held "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In Beck v. Alabama, 447 U.S. 625 (1980), the Supreme Court "held that the death penalty may not be imposed 'when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict."  Bobby v. Mitts, 563 U.S. 395, 397 (2011) (quoting Beck, 447 U.S. at 627).  But the Beck Court declined to "decide whether the Due Process Clause would require the giving of such instructions in a noncapital case." 447 U.S. at 638 n.14; see also Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) ("The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, and neither has [the Tenth Circuit].").

Because Beck has not been extended to noncapital cases, the Tenth Circuit applies "a rule of 'automatic non-reviewability'" when a habeas petitioner complains that lesser-included-offense instructions were not given in a noncapital case.  Dockins, 374 F.3d at 938; Chavez v. Kerby, 848 F.2d 1101, 1103 (10th Cir. 1988) ("[I]n [the Tenth] Circuit there is . . . 'automatic non-reviewability' of the lesser included offense argument as a basis for federal habeas corpus relief, regardless of

---

[6]     Xiong also contends that the omission of these instructions violated his equivalent rights under the Oklahoma Constitution.  Dkt. # 24, at 10.  But the violation of a right provided by state law does not present a cognizable federal habeas claim.  28 U.S.C. § 2254(a); Davis v. Reynolds, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a).")

whether the evidence was such as to support the giving of an instruction on a lesser included offense," in a noncapital case). That rule applies here because Xiong was neither charged with nor convicted of a capital offense. Dkt. # 36-2, at 179. Moreover, the jury was instructed on and able to consider the lesser offense of first degree manslaughter. Id. at 132, 172-73, 178-79. Because Xiong was neither charged with nor convicted of a capital offense, he fails to state a cognizable federal habeas claim relative to the trial court's omission of his requested lesser-included-offense instructions or the OCCA's decision that the trial court did not err in omitting those instructions. The Court therefore denies the amended petition as to claim two.

## III.     Ineffective assistance of trial counsel

In claims three and six, Xiong contends that he received ineffective assistance of trial counsel, in violation of the Sixth and Fourteenth Amendments. To prevail on a claim of ineffective assistance of counsel, a prisoner has the burden of showing his counsel was deficient and that such deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). A reviewing court's "scrutiny of counsel's performance must be highly deferential," and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Even if counsel's performance is shown to be unreasonable under this deferential standard, Strickland requires the defendant to show prejudice, i.e., to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Strickland requires the reviewing court to view counsel's performance with great deference. Id. at 689.

Section 2254(d) adds a second layer of deference. When a federal habeas court reviews a state court's decision on a Strickland claim, the habeas court must grant the state court "a deference

16

and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself." <u>Richter</u>, 562 U.S. at 101.  The only question for the habeas court is whether the state court had a reasonable basis for rejecting the <u>Strickland</u> claim.  <u>Richter</u>, 562 U.S. at 101.  And "[t]he <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial."  <u>Id.</u> at 105.

### A.    Failure to request instructions on lesser included offenses

In claim three, Xiong contends his trial counsel was ineffective for failing to request jury instructions for the lesser included offenses of first degree manslaughter by resisting criminal attempt and second degree murder.  Dkt. # 24, at 10.  Xiong believes that had his counsel sought these instructions, the trial court would have instructed the jury on them, and the jury would have reached a different result, because "[t]here was no overwhelming evidence of malice aforethought."  <u>Id.</u> at 11.  Xiong alleges that the OCCA unreasonably applied <u>Strickland</u> when it determined that Xiong failed to show error or prejudice arising from his trial counsel's failure to request instructions on these lesser included offenses.  <u>Id.</u>

Respondent contends the OCCA's denial of this claim was not unreasonable, because the record reflects no deficient performance and no resulting prejudice.  Dkt. # 35 at 26-35.  In respondent's view, the evidence presented at trial does not show Terrence committed or attempted to commit a crime immediately prior to the shooting, and thus does not support an instruction of first degree manslaughter by resisting criminal attempt.  <u>Id.</u> at 30-33.  Further, respondent argues, the evidence presented at trial did not support an instruction as to second degree murder, because the record shows Xiong attempted to shoot Terrence after he fell to the ground with four gunshot wounds.  <u>Id.</u> at 33-35.

17

The OCCA reviewed this claim on direct appeal and held:

> The merits of the claims underlying Xiong's ineffective assistance of counsel challenge[, for the failure to request lesser included offenses,] have been rejected in the preceding proposition of error.  Xiong has failed to show either that error occurred or that error affected the outcome of his case.  Consequently, he has not made the requisite showings of deficient performance and prejudice.  His ineffective assistance of counsel claim is denied.

Dkt. # 35-4, at 6.  For the underlying claim, the OCCA held:

> A defendant is entitled to a lesser-included offense instruction . . . only when *prima facie* evidence of the lesser included offense has been presented at trial.  *Prima facie* evidence of a lesser included offense is that evidence which would allow a jury rationally to find the accused guilty of the lesser offense and acquit him of the greater.  Under the evidence presented in this case, a rational jury would not have acquitted Xiong of first degree murder in favor of a conviction of first degree manslaughter by resisting criminal attempt or second degree murder.  We find no error in the trial court's failure to give instructions on these lesser included offenses.

Dkt. # 35-4, at 5 (internal citations omitted).

### 1.      First degree manslaughter by resisting criminal attempt

The elements of first degree manslaughter by resisting criminal attempt require the state to prove:  "<u>First</u>, the death of a human; <u>Second</u>, perpetrated unnecessarily (while resisting an attempt by the deceased to commit a crime)/(after an attempt by the deceased to commit a crime had failed); [and] <u>Third</u>, perpetrated by the defendant(s)."  Oklahoma Uniform Jury Instructions- Criminal (OUJI-CR) (2d) 4-102 (emphases omitted).

In support of his claim that this instruction was warranted, Xiong asserts that "the evidence of [a] struggle and a fight while the gun was going off provides evidence of an assault at minimum."  Dkt. # 24, at 10.  But, under Oklahoma law, the crime of assault is defined as "any willful and unlawful attempt or offer to do a bodily hurt to another with force or violence."  OUJI-CR (2d) 4-2.  The Court finds it was not objectively unreasonable for the OCCA to conclude these essential

18

elements were not met based on the evidence presented at trial.  Specifically, "evidence of [a] struggle and fight" in and of itself does not meet the essential elements of assault.  Contrary to Xiong's contention, it is not unreasonable to conclude Terrence was attempting to defend himself from Xiong, who brought a gun to their encounter and proceeded to engage Terrence after Xiong and Larenz separated amicably.  Thus, it was not an  unreasonable determination of the facts in light of the evidence presented for the OCCA to find no deficient performance by counsel for failing to seek an instruction for first degree manslaughter by resisting criminal attempt.

### 2.    Second degree murder

The elements of second degree murder by imminently dangerous conduct are: "<u>First</u>, the death of a human; <u>Second</u>, caused by conduct which was imminently dangerous to another/other person(s); <u>Third</u>, the conduct was that of the defendant(s); <u>Fourth</u>, the conduct evinced a depraved mind in extreme disregard of human life; <u>Fifth</u>, the conduct is not done with the intention of taking the life of any particular individual." OUJI-CR (2d) 4-91.  In Oklahoma, "[a] Second Degree Murder instruction demands evidence that the defendant did not intend to kill the victim." <u>Jones v. State</u>, 134 P.3d 150, 154 (Okla. Crim. App. 2006).

In the instant case, the evidence presented shows that Xiong brought a gun to the confrontation and did not walk away after he and Larenz shook hands and parted ways.  Rather, Xiong walked around to the driver side door, engaged in a fight with Terrence, and then shot him four times.  Xiong then attempted to shoot him a fifth time, after Terrence fell to the ground, but Larenz tackled Xiong before he could do so.  Based on this record, the Court finds it was not unreasonable for the OCCA to conclude that "a rational jury would not have acquitted Xiong of first degree murder in favor of a conviction for . . . second degree murder." Dkt. # 35-4, at 5-6.  Thus,

the OCCA reasonably concluded that Xiong failed to make "the requisite showings of deficient performance" required by Strickland.

### 3.    Prejudice

Finally, the Court finds it was reasonable for he OCCA to determine that Xiong presented no evidence that "shows . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Again, Xiong's first action after hearing about someone "messing" with his wife was to grab a gun and confront Terrence.  But most troubling for Xiong is that after he and Larenz shook hands and parted ways amicably, Xiong went to confront Terrence in a location (Terrence's driver side door) where Xiong had no reason to be.  And the jury had the opportunity to consider first degree manslaughter and Xiong's theory that he acted in self-defense.  This further negates any possible prejudice or alternative outcome had the aforementioned instructions been requested or given.

### 4.    Conclusion

Based on the foregoing, the Court agrees with respondent that § 2254(d) bars relief as to Xiong's claim that trial counsel's failure to request instructions as to these lesser included offenses resulted in constitutional error.  The Court therefore denies the amended petition as to claim three.

### B.    Conflict of interest

In his sixth claim, Xiong alleges, in part, that his trial counsel, Michael Manning, had a conflict of interest because Manning disclosed to Xiong's wife and sister, before trial, that Manning was related to the victim, Terrence Valentine. Dkt. # 24, at 15.  Xiong alleges that neither his wife nor his sister told him about Mr. Manning's disclosure before trial and that neither of his attorneys

had Xiong give them written informed consent to waive Manning's conflict of interest.  Dkt. # 24, at 15.

Respondent argues, and Xiong concedes, that Xiong did not exhaust available state remedies as to this portion of claim six.  Dkt. # 24, at 15 n.3, 16-17; Dkt. # 35, at 48-53.  Respondent urges the Court to apply an anticipatory procedural bar and deem the unexhausted portion of ground six procedurally defaulted.  Dkt. # 35, at 48-53.  As previously discussed, a federal habeas court may apply an anticipatory procedural bar, and treat an unexhausted federal claim as procedurally defaulted, "if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds."  Grant, 886 F.3d at 892 (quoting Smallwood v. Gibson, 191 F.3d 1257, 1267 (10th Cir. 1999)).  Xiong did not present this portion of claim six to the OCCA either on direct appeal or through his post-conviction appeal.  If he were to now return to state court to present this claim through a subsequent application for post-conviction relief, the state courts likely would find this claim waived and procedurally barred.  Oklahoma's "'waiver rule for claims not previously raised' is 'regularly and even-handedly applied by the state courts.'"  Johnson v. Patton, 634 F. App'x. 653, 663 (10th Cir. 2015) (quoting Smallwood, 191 F.3d at 1268 n.8) (unpublished);[7] see also Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002) (holding OKLA. STAT. tit. 22, § 1086 "is an independent and adequate state ground for denying habeas relief").  The Court thus finds it appropriate to apply an anticipatory procedural bar and treat this portion of claim six as procedurally defaulted.  Xiong may overcome the procedural default "by making either of two alternate showings: he may demonstrate 'cause and prejudice' for his failure to raise the claim [in state court], or he may

---

[7]     The Court cites this unpublished decision as persuasive authority.  FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

show that failure to review his claim will result in a 'fundamental miscarriage of justice.'" Thacker

v. Workman, 678 F.3d 820, 841-42 (10th Cir. 2012) (alteration added).  After careful review of

Xiong's amended petition, the Court finds that Xiong does not make either showing.[8]  The Court

thus denies the amended petition as to this portion of claim six.

### C.  Presentation and impeachment of witnesses

In the remaining portions of his sixth claim, Xiong contends trial counsel was ineffective for

two additional reasons.  Dkt. # 24, at 15-16.  First, he alleges trial counsel should have presented

testimony from his wife Blia Moua and "other witnesses that were present the night in question."

Dkt. # 24, at 16.  He alleges Blia's "testimony was crucial" because "[s]he was the only witness that

could testify to almost every interaction that occurred" on the night of the shooting.  Dkt. # 24, at 16.

Second, he alleges trial counsel failed to adequately cross-examine Shayn McCleary, an independent

eyewitness, after McCleary "changed his story" at trial.  Id.

Respondent contends that Xiong did not fairly present to the OCCA his complaint about trial

counsel's cross-examination of McCleary, that only that portion of claim six alleging trial counsel

---

[8]     Xiong states that this portion of claim six rest on "newly discovered evidence brought to counsel's attention." Dkt. # 24, at 15 n.3.  But Xiong's own allegations demonstrate that Mr. Manning disclosed his alleged conflict to Xiong's wife and sister, both of whom, according to Xiong, were "actively trying to aid" him before and during his trial and both of whom met with Xiong's trial attorneys.  In addition, as respondent points out, Xiong's sister helped Xiong file his original habeas petition. Dkt. # 35, at 50.  Thus, Xiong cannot show cause for the procedural default.  See Maples v. Thomas, 565 U.S. 266, 280 (2012) ("Cause for a procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule.'" (quoting Coleman, 501 U.S. at 753)).  Likewise, none of his allegations suggests that the miscarriage-of-justice exception would apply.  See Marshall v. Jones, 639 F. Supp. 2d 1240, 1256 (N.D. Okla 2009) (noting that to invoke this exception, the petitioner "must make a colorable showing of factual innocence").

was ineffective for failing to call Blia as a witness is properly before this Court, and that § 2254(d) bars relief as to the exhausted portion of this claim. Dkt. # 35, at 50-59.

Preliminary, the Court rejects respondent's argument that the complaint about trial counsel's cross-examination of McCleary is not exhausted and, thus, is subject to an anticipatory procedural bar. Respondent acknowledges that Xiong raised a similar claim in his application for post-conviction relief, but he argues the claim presented in state court is not similar enough to his habeas claim to satisfy the exhaustion requirement. Dkt. # 35, at 50-51. Xiong filed his application for post-conviction relief without the assistance of counsel and is thus entitled to a liberal construction of that pleading. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Liberally construing that pleading, the Court finds the claim raised by Xiong here, through habeas counsel, does not "depart significantly from" the claim he raised in his application for post-conviction relief and is therefore exhausted. Grant, 886 F.3d at 891.

That said, Xiong presented both of these allegations of trial counsel's ineffectiveness in state post-conviction proceedings as part of his claim that appellate counsel performed deficiently and prejudicially by failing to argue trial counsel's ineffectiveness as to these issues. Dkt. # 35-5, at 28-30, 41-42, 46-56. The state district court found that these allegations regarding trial counsel's ineffectiveness lacked merit and, as a result, that appellate counsel was not ineffective for omitting

23

them on direct appeal.  Dkt. # 35-7, at 19-23.  Though not entirely clear, it appears that the OCCA

agreed with the trial court's assessment.  Dkt. # 35-8, at 2-4.[9]

Giving the OCCA's decision the benefit of the doubt, the Court finds it reasonable to read

that decision as adjudicating the merits of the underlying claims regarding trial counsel's alleged

ineffectiveness.  As just discussed, the state court found, and the OCCA seemed to agree, that neither

allegation supported Xiong's view that trial counsel performed deficiently or prejudicially.  Dkt. #

35-7, at 19-23; Dkt. # 35-8, at 2-4.  In his amended petition, Xiong primarily rehashes the facts that

he believes proves trial counsel was ineffective.  Dkt. # 24, at 15-16.  He then states, "Wherefore,

in the interest of justice and pursuant to 28 U.S.C. 2254(d)(1)(2) a writ of habeas corpus should be

issued."  Dkt. # 24, at 16.  A mere assertion that habeas relief should be granted is not sufficient to

satisfy the stringent preconditions to habeas relief that exist when a state court has rejected the merits

of a federal claim.  See Brown v. Davenport, 142 S. Ct. 1510, 1524 (2022) (citing § 2254(d) and

stating, "[I]f a state court has adjudicated the petitioner's claim on the merits, a federal court 'shall

not' grant habeas relief 'unless' certain conditions are satisfied.").  Rather, a petitioner bears the

burden to "show that the state court's decision to reject his claim 'was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.'"  Davis v. Ayalya, 576 U.S. 257, 269-70 (2015) (quoting Richter, 562

U.S. at 103)).  Here, Xiong does not offer any basis in fact or law that would permit him to make this

---

[9]     The OCCA affirmed the denial of post-conviction relief, but its reasoning is less than clear.
The OCCA stated, in part, that "[i]neffective assistance of trial counsel was raised on direct
appeal and is therefore barred by the doctrine of *res judicata* and, in part, that appellate
counsel did not perform deficiently or prejudicially for failing to raise any of the issues
Xiong identified in post-conviction proceedings as wrongfully omitted from the direct
appeal.  Dkt. # 35-8, at 2-4.

difficult showing.  The Court thus denies the amended petition as to the properly exhausted portions of claim six.

## IV.   Ineffective assistance of appellate counsel

In claims four and five, Xiong contends that he received ineffective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments.  The Strickland standard applies equally to this type of alleged constitutional violation.  Thus, to prevail on a claim of ineffective assistance of appellate counsel, a prisoner has the burden of showing his counsel was deficient and that such deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  Generally, this means that a prisoner must show that appellate counsel performed deficiently by inadequately presenting or by omitting certain claims from the prisoner's direct appeal.  But as with any Strickland claim, a reviewing court's "scrutiny of counsel's performance must be highly deferential," and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  Even if counsel's performance is shown to be unreasonable under this deferential standard, Strickland requires the defendant to show prejudice, i.e., to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. Strickland requires the reviewing court to view counsel's performance with great deference.  Id. at 689.  Section 2254(d) adds a second layer of deference.  Thus, when a federal habeas court reviews a state court's decision on a Strickland claim, the habeas court must grant the state court "a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  Richter, 562 U.S. at 101.  The only question for the habeas court is whether the state court had a reasonable basis for rejecting the Strickland claim.  Richter, 562 U.S. at 101.  And "[t]he

<u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial." <u>Id.</u> at 105.

### A.      Failure to raise a cumulative-error claim

In his fourth claim, Xiong contends his "[d]irect appeal counsel failed to ask the OCCA to aggregate the impact of all of the errors presented on direct appeal and failed to allege the cumulative effect of all of the errors presented on direct appeal deprived petitioner of the right to a fundamentally fair trial.  The Accumulation of Errors Deprived Mr. Xiong of a Fair Trial." Dkt. # 24, at 12.  Respondent argues the cumulative-error claim was presented to the OCCA, thus no deficient performance occurred, and the OCCA's rejection of this claim was not unreasonable.  Dkt. # 35, at 36-37.

The Court agrees.  Contrary to Xiong's assertion in the amended petition, Xiong's appellate counsel raised a cumulative-error claim on direct appeal, <u>see</u> Dkt. # 35-1, at 27, and the OCCA denied the claim, finding "[t]here were no errors, individually or when considered together, that deprived Xiong of a fair trial." Dkt. # 35-4, at 6-7.  Likewise, the OCCA concluded on Xiong's post-conviction appeal that Xiong had not shown either deficient performance or prejudice regarding the presentation of this claim.  Dkt. # 35-8, at 4.  Because Xiong's appellate counsel did submit a cumulative-error claim, it was not unreasonable for the OCCA to conclude Xiong failed to show deficient performance by his appellate counsel for failing to raise that claim.  Dkt. # 35-8, at 4.  The Court therefore denies the amended petition as to claim four.

### B.      Failure to raise a judicial-misconduct claim

In his fifth claim, Xiong contends that appellate counsel was ineffective for failing to argue that the trial court committed reversible error when it stated, in front of the jury, that his case was

26

"not a stand your ground" case.  Dkt. # 24, at 12.  Respondent argues the OCCA's denial of this

claim was not unreasonable, because the "stand your ground" defense was inapplicable, and thus the

Court's statement was not incorrect, and Xiong has shown no prejudice.  Id. at 42-46.

      **1.**    **Additional facts**

      During voir dire, Xiong's trial counsel questioned the jurors about who owned a gun and the

purpose for owning a gun.  Dkt. # 30-1, at 175-78.  Finding that many of the jurors owned guns for

the purpose of protection, Xiong's counsel stated:

> Everyone that owns a gun, this question is directed to all of y'all that said you own
> a gun.  I know I didn't finish.  Raise your hand if you think you'd have a problem
> protecting yourself with your firearm.  Seeing no hands raised.
>
> The legislature of Oklahoma hereby recognizes that every person has an absolute
> right to expect absolute safety in their home and place of business.  Who doesn't
> agree with that statement?  Who does not agree with that statement?  I have to say it
> in Georgia terms.  We say, if I'm minding my business, everybody else should leave
> me alone.  Who would agree with that statement?  All right.

Dkt. # 30-1, at 178-79.  Shortly thereafter, Xiong's counsel stated, "Let's presuppose for a minute

the law says, you don't have to get away.  Could you follow the law if that's what it said?"  Id. at

180.  After a potential juror stated he agreed he could follow the law, Xiong's counsel stated,

"Would anybody else have a problem with following the law if it said you don't have to get away;

you can just stand your ground and protect yourself?"  Id. at 180.  The prosecutor asked to approach

and after denying the prosecutor's request, the trial court stated, "Mr. Manning, you need to rephrase

your question.  This is not a stand your ground case."  Id. at 181.

      The following day, counsel for Xiong filed a motion for mistrial alleging the trial court's

statement in front of the jury was prejudicial and thus, a mistrial should be granted.  Dkt. # 35-9, at

1-3.  During an in camera hearing held on the second day of trial, Xiong's counsel recalled the events

that occurred during voir dire and again asked for a mistrial on the basis that the trial court's statements foreclosed a statutory defense and the jury's willingness to consider such a defense if the instructions are presented. Dkt. # 30-2, at 16-18. The prosecutor objected to counsel's request for a mistrial stating the requirements for the stand your ground instruction were not met and thus, the stand your ground instruction would be inapplicable to the facts of the instant case. Id. at 18-19. The trial court agreed the stand your ground principle was inapplicable in the instant case because the stand your ground principle only applied when an intruder entered a structure of some kind. Id. at 19. Ultimately, while the trial court rejected Xiong's request for a stand your ground instruction, the trial court did "give a no duty to retreat instruction." Dkt. # 24, at 12; 36-2, at 167.

Oklahoma law's stand your ground jury instruction, the instruction requested by Xiong, provides:

> A person has no duty to retreat and has the right to stand his/her ground and meet force with force, including deadly force, if he/she is not engaged in an unlawful activity and is attacked in any place where he/she has a right to be, if he/she reasonably believes it is necessary to do so to prevent (death/(great bodily harm) to himself/herself/ another)/(the commission of a forcible felony).

OUJI-CR (2d) 8-15A. This instruction's Notes on Use provides clarity that it "should be used only if the attack occurred outside of a dwelling, residence or occupied vehicle." Id. Rather than providing this instruction, the trial court ultimately instructed the jury that "[a] person who was not the aggressor, did not provoke another . . ., [or] did not voluntarily enter into mutual combat has no duty to retreat, but may stand firm and use the right of self-defense." Dkt. # 36-2, at 167.

2.     **Analysis and conclusion**

Applying Strickland, the state district court concluded, and the OCCA agreed, that appellate counsel did not perform deficiently or prejudicially by omitting a claim that the trial court committed

28

misconduct or otherwise deprived Xiong of a fair trial by stating that Xiong's case was not a "stand your ground" case. Dkt. # 35-7, at 5-7; Dkt. # 35-8, at 2-4.  Because the OCCA applied <u>Strickland</u>, the Court rejects Xiong's assertion that "the OCCA's decision was contrary to <u>Strickland</u>." Dkt. # 24, at 13.  Xiong's only other discernible arguments appear to suggest either that the OCCA misapplied state law in determining that the trial court did not commit misconduct or that the OCCA (or the state district court) misapprehended the facts in determining that appellate counsel did not perform deficiently by failing to challenge the trial court's statement of the law. Dkt. # 24, at 12-13. Having considered the decisions from both state courts, and the record as a whole, the Court concludes that neither argument demonstrates Xiong's view that it was objectively unreasonable, as a matter of law or fact, for the OCCA to conclude, under <u>Strickland</u>, that appellate counsel's performance was not deficient or prejudicial.  Because § 2254(d) bars relief, the Court denies the amended petition as to claim five.

## CERTIFICATE OF APPEALABILITY

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Because Xiong has not made the requisite showing on any of his claims, the Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      the Clerk of Court shall note on the record the substitution of Rick Whitten in place

        of Scott Crow as party respondent;

2.      the petition for writ of habeas corpus (Dkt. # 1) is **declared moot**;

3.      the amended petition for writ of habeas corpus (Dkt. # 24) is **denied**;

4.      a certificate of appealability is **denied**; and

5.      a separate judgment shall be entered in this matter.

**DATED** this 25th day of July, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

30